UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
                                     :

LYNDEN JOHNSON,                 :

                        :

                 Plaintiff,   :

                        :

         -v-              :

                        :

CITY OF NEW YORK and HECTOR   :
BRUNO,

                        :

             Defendants.  :

                        :
--------------------------------------------------------X

USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 1/28/14

No. 12 Civ. 9242 (RA)

OPINION AND ORDER

RONNIE ABRAMS, United States District Judge:

*Pro se* Plaintiff Lynden Johnson brings this suit against Defendants City of New York and New York Police Department ("NYPD") Detective Hector Bruno, alleging that they violated his rights under Article 36 of the Vienna Convention on Consular Relations ("the Vienna Convention" or "the Convention"), Apr. 24, 1963, [1970] 21 U.S.T. 77, 100-01, T.I.A.S. No. 6820. Paragraph 1(b) of Article 36 requires officers who arrest a foreign national (1) to notify the individual's consulate of his arrest upon request; (2) to forward "[a]ny communication addressed to the consular post by the person arrested"; and (3) to "inform the person concerned without delay of his rights under this sub-paragraph." 21 U.S.T. at 101.

Plaintiff's complaint alleges that he was arrested on May 12, 2011, and that during his arrest, NYPD officers failed to inform him of his rights under Article 36 of the Convention, despite being notified of his "foreign status."[1] (Compl. at 3.) He alleges further that officers "refused to contact [his] consulate upon [his] request for assistan[ce]." (Id.) Defendant Hector Bruno, according to the complaint, was the arresting officer who refused to convey to the

---

[1] Johnson's complaint does not specify his country of origin.

consulate Plaintiff's "request for legal assistance and emotional support." (Id.)

Before the Court is Defendant City of New York's motion to dismiss.[2] For the following reasons, that motion is granted.

## 1. Article 36 and the Mora Decision

The Vienna Convention was drafted in 1963, with the aim of "contributing to the development of friendly relations among nations, irrespective of their differing constitutional and social systems. Sanchez-Llamas v. Oregon, 548 U.S. 331, 337 (2006) (quoting 21 U.S.T. at 79) (alteration omitted). Upon the advice and consent of the Senate, the United States ratified the treaty in 1969. Id. at 338. Paragraph 1 of Article 36 of the Convention provides:

> 1. With a view to facilitating the exercise of consular functions relating to nationals of the sending State:
>
> (a) consular officers shall be free to communicate with nationals of the sending State and to have access to them. Nationals of the sending State shall have the same freedom with respect to communication with and access to consular officers of the sending State;
>
> *(b) if he so requests, the competent authorities of the receiving State shall, without delay, inform the consular post of the sending State if, within its consular district, a national of that State is arrested or committed to prison or to custody pending trial or is detained in any other manner. Any communication addressed to the consular post by the person arrested, in prison, custody or detention shall also be forwarded by the said authorities without delay. The said authorities shall inform the person concerned without delay of his rights under this sub-paragraph;*
>
> (c) consular officers shall have the right to visit a national of the sending State who is in prison, custody or detention, to converse and correspond with him and to arrange for his legal representation. They shall also have the right to visit any national of the sending State who is in prison, custody or detention in their district in pursuance of a judgment. Nevertheless, consular officers shall refrain from taking action on behalf of a national who is in prison, custody or detention if he expressly opposes such action.

---

[2]     According to the docket, Defendant Bruno was served with the summons and complaint after the City of New York filed the motion to dismiss. (Dkt. No. 20.) Because the City's arguments apply equally to Bruno, the Court dismisses all claims against him as well.

2

21 U.S.T. at 100-01 (emphasis added).

A treaty "is primarily a compact between independent nations; it depends for the enforcement of its provisions on the interest and the honor of the governments which are parties to it." United States v. De La Pava, 268 F.3d 157, 164 (2d Cir. 2001) (quoting Head Money Cases, 112 U.S. 580, 598 (1884)) (alteration omitted). As a general matter, "there is a strong presumption against inferring individual rights from international treaties." Id. Whether this presumption is overcome in a particular case "is for the court to decide as a matter of treaty interpretation." Mora v. New York, 524 F.3d 183, 193 (2d Cir. 2008).

The Supreme Court has not addressed whether individuals may bring suits for damages to remedy violations of Article 36 of the Convention. In Sanchez-Llamas v. Oregon, 548 U.S. 331, the Court assumed without deciding that Article 36 "grants individuals enforceable rights," but concluded that suppression of evidence was not an appropriate remedy for violations of Article 36. Id. at 337, 343.

The Second Circuit has addressed the viability of a damages action under Article 36, in a decision that is highly instructive in the instant case. In Mora v. New York, 524 F.3d at 209, the Circuit held that individuals cannot bring an action for damages under Article 36, 42 U.S.C. § 1983, or the Alien Tort Statute for violations of the third clause of Article 36(1)(b), the provision requiring that individuals be informed of their rights under Article 36.[3]

In examining the text of the Convention, the Mora Court noted that Article 36 begins "with the following statement of purpose: 'with a view to facilitating the exercise of consular functions relating to nationals of the sending State.'" Id. at 195 (quoting 21 U.S.T. at 101) (alteration omitted). The Court also cited the fifth paragraph of the Convention's Preamble,

---

[3]       The Alien Tort Statue, at times referred to as the Alien Tort Claims Act, provides: "The district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." 28 U.S.C. § 1350.

which provides that "the purpose of such privileges and immunities [as outlined in the Convention] is not to benefit individuals but to ensure the efficient performance of functions by consular posts on behalf of their respective States." Id. at 196 (quoting 21 U.S.T. at 79). This provision, the Circuit explained, "certainly reflects the broader principle that the Convention is concerned primarily, if not exclusively, with establishing relationships and rights as between States and State officials." 524 F.3d at 196.

The Circuit then relied on other well-established principles of international law to hold that Article 36(1)(b), the third clause, did not provide a private right of action. Recognizing the "presumption that 'treaties do not create privately enforceable rights in the absence of express language to the contrary,'" it noted that the Convention was silent about whether individuals may seek damages for violations of Article 36. 524 U.S. at 201, 204 (quoting Medellín v. Texas, 552 U.S. 491, 506 n.3 (2008)). The Court also acknowledged an *amicus* brief submitted by the United States Department of State and Department of Justice, which asserted that the Vienna Convention "does not create domestically enforceable federal law of the sort that would support plaintiff['s] claims." Id. at 204.

The Second Circuit confined its holding to the question of whether a private right of action existed to remedy violations of the third clause of Article 36(1)(b). In a footnote, the Court explicitly reserved the question of whether a detaining authority's refusal "to notify the consulate at the request of the detained alien" might give rise to a cause of action for damages. 524 F.3d at 187 n.4.

**2.    Application to Plaintiff's Claims**

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556

4

U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Additionally, because Plaintiff is proceeding *pro se*, his complaint "must be construed liberally and interpreted to raise the strongest arguments that [it] suggest[s]." Sykes v. Bank of Am., 723 F.3d 399, 403 (2d Cir. 2013). Here, the Court construes Plaintiff's complaint to raise claims under Article 36 of the Convention, 42 U.S.C. § 1983, and the Alien Tort Statute.

Insofar as Plaintiff's complaint seeks damage for officers' failure to inform him of his rights under Article 36 of the Convention, those claims squarely contradict the holding of Mora. See 524 F.3d at 209. Thus, the remaining question this complaint raises is whether the refusal of arresting officers to inform a foreign national's consulate of his arrest, despite his request that they do so, gives rise to a cause of action.

Although the Second Circuit explicitly reserved this question in Mora, see 524 F.3d at 187 n.4, each of the reasons the Court cited to find that no cause of action existed for violations of Article 36(1)(b)(third) apply equally to Article 36(1)(b)(first). Both the introduction to Article 36 and the preamble to the Convention emphasize that the Treaty is aimed at improving consular relations, not at creating enforceable individual rights. See 21 U.S.T. at 79, 100. Neither Article 36, nor any other provision of the Treaty, suggests that its drafters "intend[ed] to confer rights directly upon individuals" so as to overcome the presumption against enforceable individual rights. Mora, 524 F.3d at 194. And the Executive Branch's position in Mora—that the Vienna Convention "does not create domestically enforceable federal law"—applies equally to Article 36(1)(b)(first).[4] Id. at 204.

---

[4]     The Court in Mora also concluded that plaintiff had failed to state a cause of action under the Alien Tort Statue because he had not shown that the obligation described in Article 36(1)(b)(third) had "attained the status of a

The only plausible basis for differentiating between enforcement of Article 36(1)(b)(first) and Article 36(1)(b)(third) is that the Convention refers to the first clause of Article 36(1)(b) as a "right," but does not do so explicitly with respect to the third clause. The Second Circuit discounted the weight of this argument, however, noting that "the vocabulary of 'individual rights' may be used to refer to certain potential benefits provided by treaty that do not actually create rights enforceable by the individual benefitted." Id. at 195. This minor textual difference does not provide a basis for overcoming the presumption against interpreting treaties to provide individually enforceable rights, or for finding such rights despite the view of the Executive Branch.

This conclusion is consistent with the reasoning of other Circuits. In Gandara v. Bennett, 528 F.3d 823, 825 (11th Cir. 2008), plaintiff asserted that arresting officers "neither informed him of, nor provided him with, the right to consular notification under the Treaty." The Court concluded that plaintiff's complaint did not state a claim under § 1983, because the Convention does not provide individually enforceable rights. Id. The Ninth Circuit reached a similar conclusion, reasoning that the Convention only confers rights on the contracting States, not individual detainees. See Cornejo v. County of San Diego, 504 F.3d 853, 855 (9th Cir. 2007). The Fifth and Sixth Circuits, albeit in the criminal context, have held broadly that Article 36 does not create individually enforceable rights. See United States v. Emuegbunam, 268 F.3d 377, 394 (6th Cir. 2001) ("For the foregoing reasons, we hold that the Vienna Convention does not create a right for a detained foreign national to consult with the diplomatic representatives of his nation that the federal courts can enforce."); United States v. Jiminez-Nava, 243 F.3d 192, 198 (5th Cir.

---

binding customary norm." 524 F.3d at 209 (quoting Sosa v. Alvarez-Machain, 542 U.S. 692, 737 (2004)). In other words, "imprisonment in violation of Article 36(1)(b)(third)" is not "so bad that those who engage in this conduct become enemies of the human race." Id. (quoting Sosa, 542 U.S. at 737) (alteration omitted). Failure to notify a consulate of a foreign national's arrest, despite his request, similarly does not rise to the level of those torts cognizable under the Alien Tort Statue.

6

2001) ("The sum of Jimenez–Nava's arguments fails to lead to an ineluctable conclusion that Article 36 creates judicially enforceable rights of consultation between a detained foreign national and his consular office. Thus, the presumption against such rights ought to be conclusive."). The only other district court from this Circuit to address the issue concluded that "Article 36's directive that detaining officials shall notify a consular office upon an alien's request cannot, when violated, be vindicated by a private action for damages filed in our courts." Gordon v. City of N.Y. Police Dep't 84th Precinct, 10-CV-3706, 2012 WL 1067964, at *6 (E.D.N.Y. Mar. 29, 2012).[5]

One might wonder how the obligations Article 36 imposes can be enforced if individuals cannot seek individual damages, suppression, or dismissal of an indictment for violations of the provision. See Sanchez-Llamas v. Oregon, 548 U.S. 331, 337 (2006) (suppression); United States v. De La Pava, 268 F.3d 157, 165 (2d Cir. 2001) (dismissal of an indictment). The Second Circuit addressed this question in Mora, however, and suggested four ways in which Article 36 can be enforced: states-parties can safeguard their rights "through negotiations and reclamations"; the federal government "can sue state and local governments to ensure compliance"; domestic courts may ask arrested foreign nationals whether they have been informed and received the benefit of Article 36's protections; and a detained alien "may be able to petition officials of a detaining authority, including where appropriate the courts, to comply with the obligations set forth in Article 36." 524 F.3d at 197-99. These mechanisms may be unsatisfactory to Plaintiff in this case. But permitting a cause of action for damages, in the Court's view, would be inconsistent with the law of this Circuit.

---

[5]     The Seventh Circuit concluded that Article 36 does create individual rights enforceable under § 1983. See Jogi v. Voges, 480 F.3d 822, 836 (7th Cir. 2007). That decision concerned a foreign national who was "not informed of his right to consular notification under Article 36," id. at 824—that is, a claim for a violation of the third clause of Article 36(1)(b)—and therefore directly contradicts the Second Circuit's holding in Mora. The Court thus declines to follow the Seventh Circuit's reasoning.

7

**3.    Conclusion**

For the reasons described above, the motion to dismiss is GRANTED.  The Clerk of

Court is requested to terminate the motion pending at docket number 12 and to close the case.

SO ORDERED.

Dated:        January 28, 2014
              New York, New York

Ronnie Abrams
United States District Judge

8